Harrison ELLIOT, John Rasmussen, Joe Rutherford, Karl Zoldahn, Bud Zoldahn, Steve Marciniak, Harold Helm, Randy Emanuelson, Jack Elliot, Deane Scharmer and Ken Halcrow, Contestants and Appellants,

v.

DRAYTON PUBLIC SCHOOL DISTRICT NO. 19; John Styles, as Clerk of Drayton Public School District No. 19; Richard Lavik, as Superintendent of Drayton Public School District No. 19; and Dennis McFarland, Beverly Jensen, Jack Call, Lee Becker and Philip Raney, as Members of the School Board of Drayton Public School District No. 19, Contestees and Appellees.

Civ. No. 870090.

Supreme Court of North Dakota.

May 28, 1987.

DePuy, Kopperud, Goulet & Hall, Grafton, for contestants and appellants; argued by Michael E. Keller.

Jon H. Brosseau, Drayton, for contestees and appellees.

MESCHKE, Justice.

Election contestants appeal a judgment dismissing their action on the ground that it was not commenced within 14 days after the final canvassing of the election as re-

quired by § 16.1–16–04, N.D.C.C. The contestants also appeal an order denying their motion for relief from the judgment. We hold that there was a sufficient attempt to commence the action within 14 days to apply the continuation provisions of § 28–01–38, N.D.C.C. We reverse and remand for further proceedings.

A special mill levy election was held in Drayton Public School District No. 19 on January 27, 1987. Final canvassing of the election on January 30, 1987 declared the mill levy passed. The contestants challenged the election for illegal, erroneous, or fraudulent voting in violation of § 16.1–16–05(2), N.D.C.C.

On the afternoon of February 13, 1987, the fourteenth day following the final canvassing, John Styles, clerk of the school district, was served with a summons and election contest complaint by a Pembina County Deputy Sheriff. Later that afternoon, contestants' counsel filed the summons and complaint with the clerk of district court, withdrew the papers near 4:30 p.m. for further service of process, and delivered them with sufficient copies to the sheriff's office for service on the school board members. The school board members, however, were not served until the next morning, February 14, 1987, the fifteenth day after the final canvassing.

In their response, the contestees claimed defenses of insufficiency of process, insufficiency of service of process, and the statute of limitations. The contestees moved to dismiss the contest for these reasons. Following a hearing on March 9, 1987, the trial court determined that "the Contestees in this action must of necessity be members of the Drayton School Board" and that "none of said school board members have been served within the required time provided by law." The court also determined that, although the clerk of the school district was timely served, the clerk "is not a necessary party to this action, and service of process upon the clerk is not service upon the school board or a member of the school board." The court therefore dismissed the action on the ground that it was barred by the contestants' failure to commence it within the 14–day limit for an election contest under § 16.1–16–04, N.D.C.C.

The contestants promptly moved for relief from the judgment under Rule 60(b)(iv) and (vi), N.D.R.Civ.P., asserting that the election contest action was properly "commenced" under § 28–01–38, N.D.C.C. After a hearing on March 25, 1987, the court concluded that the continuation provisions of § 28–01–38, N.D.C.C., did not apply to an election contest. The court further determined that "it is unclear that the mere timely delivery of the summons and complaint to the sheriff equates with the intent to serve immediately, and within the limitation period;" and that "the affidavits filed by both parties serve to confuse the issue of why service was not made promptly, and that is a circumstance working against the Contestants' position of explaining why service was not made within the 14 day period." The court denied the contestants' motion, and this appeal followed.

■ At the outset, we agree with the trial court's determination that, in an action challenging a special election on a mill levy proposition in a school district, the school board is the principal "contestee". It must be named as a party and timely served to contest the election.

The proper "contestee" in a challenge to a school district mill levy election is not specified in Chapter 16.1–16, N.D.C.C. Section 16.1–16–02, N.D.C.C., however, provides that "[i]n a county election to change the county seat or to change the boundaries of the county, the complaint shall be filed against the board of county commissioners, who shall appear and defend the contest action." We believe that the school board occupies a position within the school district equivalent to the board of county commissioners within a county.

The school board has the power and duty to levy taxes on property in the district for school purposes. See § 15–29–08(15), N.D.C.C. The school board, upon resolution, may call for a special election, see § 15–28–03, (1), N.D.C.C., and more specifically, may authorize a mill levy election. See §§ 57–15–14 and 57–15–14.3, N.D.C.C. For an

election, the school board must "designate one or more precincts and polling places for the school election," and "appoint two persons to act as judges and two persons to act as clerks of the election in each precinct." § 15–28–04, N.D.C.C. The school board canvasses all election returns and declares the result of an election, which is entered upon the records of the board. *See* § 15–47–06, N.D.C.C. From these statutes, we conclude that the school board of the school district is the principal "contestee" in an action to contest a special mill levy election.

■ We also agree with the trial court's conclusion that service of process upon the clerk of the school district did not constitute service of process upon the school board. Rule 4(d)(2)(E), N.D.R.Civ.P., provides that "[p]ersonal service of process within the state must be made ... upon a ... school district, ... by delivering a copy of the summons to any member of its governing board." Clearly, the governing board of a school district is its school board. *See* Chapter 15–29, N.D.C.C. The clerk of a school district "is not a member of the board ...," § 15–29–03, N.D.C.C., nor do the clerk's duties encompass receipt of service of process for the school board. *See* § 15–29–09, N.D.C.C. Therefore, service upon the clerk on February 13, 1987, was not timely service upon the school board. *See also Nissen v. City of Fargo,* 338 N.W.2d 655, 657 (N.D.1983) [service upon city auditor was not service upon board of city commissioners]; *Farrington v. Swenson,* 210 N.W.2d 82, 85 (N.D.1973) [service upon county auditor was not service upon board of county commissioners].

Having concluded that the school board is the principal "contestee" and that service upon the clerk was not service upon the board, we believe the focal issue in this case is whether § 28–01–38, N.D.C.C., applies to an action to contest an election under Chapter 16.1–16, N.D.C.C.

Section 16.1–16–04, N.D.C.C., says that "[a]ny action to contest an election shall be commenced and the complaint shall be filed in the district court of the contestee's county of residence ... within fourteen days after the final certification by the appropriate canvassing board...." Section 16.1–16–03, N.D.C.C., says that "[a]n action to contest an election shall be commenced by service of a summons and verified complaint." A pertinent part of Section 28–01–38, N.D.C.C., says:

"*28–01–38. When action deemed commenced.*—An action is commenced as to each defendant when the summons is served on him, or on a codefendant who is a joint contractor or otherwise united in interest with him. An attempt to commence an action is equivalent to the commencement thereof within the meaning of this chapter when the summons, with the intent that it shall be actually served, is delivered:

"1. To the sheriff or other officer of the county in which the defendants or one of them usually or last resided; ...

\*    \*    \*    \*    \*    \*

"Such an attempt must be followed within sixty days by the first publication of the summons or the service thereof."

The contestants assert that because the summonses and complaints were delivered to the sheriff on the afternoon of the fourteenth day, with the intent that they be actually served upon the members of the school board, and because the papers were promptly served on the morning of the fifteenth day, their action was validly "commenced" under § 28–01–38, N.D.C.C., within the 14–day limitation period provided by § 16.1–16–04, N.D.C.C. The contestees contend that § 28–01–38, N.D.C.C., does not apply to election contests under Chapter 16.1–16, N.D.C.C., and that even if it does, the "contestants are not deserving to come within its saving graces."

■ Statutes limiting the time to bring an election contest are mandatory and jurisdictional. *Kee v. Redlin,* 203 N.W.2d 423, 428 (N.D.1972); *Maher v. Jahnel,* 73 N.D. 742, 19 N.W.2d 453, 454 (1945). The universal policy of these laws is to speed up resolution of a contested election. *Soules v. Wolf,* 65 N.D. 194, 256 N.W. 757, 760 (1934); *Walton v. Olson,* 40 N.D. 571, 170 N.W. 107, 110 (1918); *see also* §§ 16.1–16–

06 and 16.1–16–09, N.D.C.C. While expediting an election contest is no doubt important, we must also remember that " 'the right of suffrage is a fundamental matter in a free and democratic society.' " *State ex rel. Olson v. Bakken*, 329 N.W.2d 575, 579 (N.D.1983) [quoting *Reynolds v. Sims*, 377 U.S. 533, 561–562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506, 527 (1964) ]. Courts must be alert to preserving the purity of elections. Courtroom doors should not be arbitrarily " 'closed to hearing charges of deception and fraud that in any way impede the exercise of a free elective franchise.' " *Diaz v. Superior Court, in and for County of Pinal*, 119 Ariz. 101, 579 P.2d 605, 606 (Ct.App.1978) [quoting *Griffin v. Buzard*, 86 Ariz. 166, 342 P.2d 201, 205–206 (1959) ].

The contestees assert that applying § 28–01–38, N.D.C.C., to an election contest would allow the sheriff to delay service up to 60 days after the summons and complaint were delivered to him which would thwart the legislative plan for speedy determination of election contests. The contestees rely upon *Franson v. Carlson*, 272 Minn. 376, 137 N.W.2d 835, 839 (1965), where the court, in holding that a rule of civil procedure substantially similar to § 28–01–38, N.D.C.C., was inapplicable to election contest cases, reasoned that "[t]o permit the delay that would result from holding that Rule 3.01 is applicable to these proceedings would be quite intolerable." We find the contestees' argument and the *Franson* court's rationale unpersuasive.

Section 28–01–38, N.D.C.C., is a statute of general application. *See Citizens' State Bank v. Smeland*, 48 N.D. 466, 184 N.W. 987, 988 (1921) (construing predecessor statute); *see also Smith v. Wells*, 70 S.D. 435, 18 N.W.2d 308, 309 (1945). Statutory provisions which do not expressly exclude each other from application "must be considered together and, if possible, apparently conflicting provisions should be made to harmonize." *United Development Corp. v. State Highway Dept.*, 133 N.W.2d 439, 443 (N.D.1965). In this case, the express language of the election contest statutes and § 28–01–38, N.D.C.C., does not conflict. Both §§ 16.1–16–03 and 28–01–38, N.D.C.C., speak of the commencement of an action in terms of "service" upon an opposing party. *See also* Rule 3, N.D.R. Civ.P. Rather, it is the possibility of a flagrant application of the statute to an election contest which creates an apparent conflict with a legislative purpose. But, certainly, applying § 28–01–38, N.D.C.C., here, where service was promptly accomplished on the school board members on the morning of the fifteenth day, does no violence to the underlying purpose of expediting an election contest.

While the statutes can be harmonized, the policy underlying expedited finality of an election would not permit a contestant to have a full sixty days to effect any service of process. Depending on the circumstances, a much shorter time may be all that would be permissible. While an aggravated application of N.D.C.C. § 28–01–38 would not be permitted, the possibility of a contestant seeking to put it to an abusive use does not warrant our refusal to apply it here. And, we can visualize a number of other circumstances, such as the temporary absence of an essential contestee, which, in justice, would necessitate application of the continuation provisions of N.D.C.C. § 28–01–38. Therefore, we conclude that the district court erred in holding as a matter of law that N.D.C.C. § 28–01–38 does not apply to commencement of an action to contest an election.

The contestees assert, however, that § 28–01–38, N.D.C.C., cannot serve to extend the time for service in this case because the contestants did not deliver the summons and complaint to the sheriff with the intent that the papers be served within the 14–day limitation period. In *Galehouse v. Minneapolis, St. Paul & S.S.M. Ry. Co.*, 22 N.D. 615, 135 N.W. 189, 191 (1912), this court, in interpreting the predecessor statute to § 28–01–38, N.D.C.C., stated:

"[I]t is clear from the authorities and from our statute that an action is commenced, so far as the statute of limitations is concerned, when the writ is filled out and delivered to the proper officer, *with the bona fide intent to have it*

*served at once, and not at the time that the actual service is made....*" [Citations omitted; emphasis added.]

The trial court did not determine whether the contestants had such a bona fide intent, but commented that the affidavits filed by the parties tended to "confuse" the issue of why service was not made on the fourteenth day.

The affidavits give the chronology of the events on February 13, 1987. Joe Martindale, the Sheriff of Pembina County, stated that he received a morning telephone call from contestants' attorney seeking to have a deputy available for service in the Drayton area that afternoon. The sheriff told the attorney that he had a prior commitment and that a deputy was accompanying him, so he could not assure that a deputy would be available. The sheriff advised the attorney that he should call the sheriff's office when the papers were ready for service. Deputy Sheriff Ronald Helm stated that the attorney called him at 2:15 p.m. at his home and asked him to serve the papers. Helm, however, was ill and declined. The attorney then contacted Deputy Sheriff Randall Schuster at 3 p.m. at his home. Schuster agreed to serve the papers but told him that he had to leave for an appointment in Grafton later in the afternoon. Schuster was driven by the attorney to the Drayton public school, but John Styles, clerk of the school district, was not there. Schuster stated in his affidavit presented on behalf of the contestees that he then suggested to the attorney that he serve certain members of the school board who lived near the school. Apparently under the belief that members of the school board were attending a funeral in Minnesota, the attorney opted to proceed to Styles' farm 12 miles northwest of Drayton, where Styles was served at approximately 3:45 p.m.

At this point, Schuster had to leave for his appointment and suggested to the attorney that he leave the papers with him so he could serve them later that evening. The attorney declined, however, because he needed to have the summons and complaint filed with the district court before the office closed at 5 p.m. Schuster also stated that although he offered to serve the papers when he returned, the attorney "told me that that wouldn't be necessary, because all that mattered was to serve the clerk that day (Friday) because he was 'the main one,' and the rest of the papers could be served by someone else out of Cavalier the next day." Deputy Sheriff Alan Latozke stated that he received the papers at 5 p.m. and that he "was not specifically directed that service had to be made yet the same day I received the papers...." Latozke served the school board members before noon the following day.

■ The affidavits indicate that this is not a case where the contestants' attorney merely gave the papers to the sheriff's office on the fourteenth day without concern that they be served promptly. The attorney's actions throughout that day demonstrate a faithful and diligent effort to procure service on the contestees. A named contestee was timely served and the action was timely filed. After filing and delivery to the sheriff's office during the last hour of the business day, service was promptly completed the next morning. Considering the total circumstances of this case, we believe that the contestants delivered the papers to the sheriff's office with a bona fide intent that they be served as soon as reasonably possible in compliance with § 28–01–38, N.D.C.C. Accordingly, the contestants' election contest should not have been dismissed for failure to commence the action within 14 days under § 16.1–16–04, N.D.C.C.

We therefore conclude that the district court abused its discretion in denying the contestants relief from the judgment dismissing their election contest. The order and judgment are reversed and the case is remanded for further proceedings.

ERICKSTAD, C.J., and GIERKE and VANDE WALLE, JJ., concur.

LEVINE, J., concurs in the result.