Jean KELLY

v.

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY and Kinley Jones.**

**No. 98–273–Appeal.**

Supreme Court of Rhode Island.

Nov. 15, 1999.

John D. Lynch, Karen Lynch Bernard, John D. Lynch, Jr., Warwick, for Plaintiff.

C. Russell Bengtson, Providence, James E. Kelleher, Warwick, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

# OPINION

WEISBERGER, Chief Justice.

This case comes before us on cross-appeals from a judgment entered in the Superior Court in favor of the plaintiff, Jean Kelly (plaintiff), in the sum of $340,293.93 plus interest.[1] The judgment was rendered on the plaintiff's claim against the defendant, Rhode Island Public Transit Authority (RIPTA), on two counts of the complaint alleging liability on the part of RIPTA for the maintenance and management of its premises. RIPTA has appealed from this judgment. The plaintiff has appealed from the denial of her motion for a new trial following the rendition of a verdict in favor of RIPTA and a bus driver, Kinley Jones (Jones or defendant), on the plaintiff's claim for negligent operation of a RIPTA bus. We deny and dismiss RIPTA's appeal on the premises-liability claim and deny the plaintiff's appeal from the denial of her motion for a new trial. We affirm the judgment entered in the Superior Court. The facts insofar as pertinent to these appeals are as follows.

At the time of this accident RIPTA was the owner of a parcel of real estate located adjacent to Broad Street in the city of Cranston. This property had been used for many years as the location of a turnaround for RIPTA buses. Passengers were permitted to board buses in the turnaround. At the time of the accident, two RIPTA buses, one operated by defendant Jones and one operated by Blase Barbieri (Barbieri) were in the turnaround area. Jones had been a bus driver for RIPTA for twenty-five years. He had pulled into the turnaround area at the end of his bus route at approximately 10:15 a.m. and was scheduled to leave again at approximately 10:30 a.m. Barbieri had pulled into the area after Jones had parked his bus and stopped at an angle about twenty feet behind Jones's bus, so that Jones's bus might continue on as scheduled.

A witness for RIPTA, Raymond Roy Hagglund, a professor of mechanical engineering, stated that there is a blind zone for a driver looking into the side- and rearview mirrors. Thus a potential passenger might pass near a bus without being observed.

The subject property was a large black-topped area resembling a parking lot. It was partially divided across the midpoint by a small abandoned one-story building that was referred to at trial as a "vestibule." About 200 pedestrians would pass through this turnaround area each day. Near the sidewalk adjacent to Broad Street was a bus shelter used by patrons of RIPTA while waiting for buses. The turnaround area contained no warning signs or markings indicating areas of safe or dangerous passage to members of the public who traversed the area.

On June 8, 1995, plaintiff walked through this property in order to reach the bus shelter located on RIPTA's property adjacent to Broad Street for the purpose of boarding a bus that was expected to stop at the shelter on Broad Street. She had not intended to board either of the buses located in the turnaround. Had plaintiff not crossed the turnaround area, she could have reached the shelter by walking on Montgomery Street where she resided and then turning right on to Broad Street. As she was crossing the turnaround area, Jones started the engine of his bus, released the brake, put the bus in gear, and closed the door. Jones waived at Barbieri as he proceeded toward one of the driveways that would give access to Broad Street. As the bus moved, it came into contact with plaintiff. The right front tire ran over plaintiff's leg. She was seriously injured. Her left leg was eventually amputated below the knee and her right

---

1. The jury, responding to interrogatories submitted by the trial justice, found in favor of plaintiff on the premises-liability counts in the sum of $1,134,323.10. The jury found plaintiff to have been 70 percent responsible for her injuries, thus reducing the judgment to $340,293.93 plus interest.

wrist was fractured. Jones testified that he did not see plaintiff until after the accident. After the collision Barbieri realized that something unusual had occurred. He left his bus and saw plaintiff lying injured on the ground. Jones's attention was called to the accident, and he too left his bus after the collision.

The plaintiff testified that she was about halfway across the turnaround area when she was struck by the bus. She did not notice the bus until after the collision, nor did she see the bus moving prior to the collision. At the time of the accident she was seventy-seven years of age.

In support of its appeal RIPTA raises three issues. These issues will be considered in the order in which they appear in RIPTA's brief. Further facts will be supplied as may be necessary to deal with these issues. The plaintiff raises one issue—the denial of her motion for new trial on her complaint for negligent operation of the bus.

I

THE MOTION TO RECUSE

This case had previously been tried before the same justice of the Superior Court who presided at the instant trial. The previous trial was based upon a complaint that alleged negligence only on the part of the bus driver, resulting in injury to plaintiff. RIPTA was joined as a defendant under the doctrine of respondeat superior. After trial in the first case the jury returned a verdict in favor of both defendants. The plaintiff then moved for a new trial. The trial justice granted this motion, commenting that no reasonable jury could have found that plaintiff was 100 percent responsible for her own injuries. In passing upon the motion, the trial justice had found that a portion of Jones's testimony was not credible. RIPTA and Jones appealed the granting of a new trial in the first case. This appeal was denied and dismissed by this Court in *Kelly v.*

*Rhode Island Public Transit Authority,* 703 A.2d 1123 (R.I.1997) (*Kelly I* ).

On the basis of the trial justice's comments in *Kelly I,* RIPTA moved that he recuse himself from presiding at the second trial on the ground that he could not be impartial. The trial justice denied this motion. From the denial of their motion to recuse, defendants petitioned for issuance of a writ of certiorari from this Court. The petition for writ of certiorari was denied on February 4, 1998, without opinion.

■ ■ It is a well-recognized principle that a trial justice should recuse himself or herself in the event that he or she is unable to render a fair or an impartial decision in a particular case. *In re Antonio,* 612 A.2d 650, 653 (R.I.1992). It is an equally well-recognized principle that a trial justice has as great an obligation not to disqualify himself or herself when there is no sound reason to do so as he or she has to disqualify himself or herself when a proper occasion to do so does arise. *State v. Clark,* 423 A.2d 1151, 1158 (R.I.1980). We have held that a party who seeks the recusal of a trial justice must set forth facts which establish that the justice has a "personal bias or prejudice by reason of a preconceived or settled opinion of a character calculated to impair his impartiality seriously and to sway his judgment." *Cavanagh v. Cavanagh,* 118 R.I. 608, 621, 375 A.2d 911, 917 (1977).

■ ■ In the case at bar both defendants have failed to establish any personal bias or prejudice on the part of the trial justice. He reviewed the evidence subsequent to the rendition of a verdict in *Kelly I.* He commented on the evidence and weighed the credibility of witnesses as he was required to do on such a motion. The fact that he commented on the credibility of the bus driver and the weight of the evidence in respect to liability did not establish any personal bias or lack of impartiality on his behalf. In fact, in the case at bar the trial justice found Jones's testimony to be credible and denied the motion for new

trial filed by plaintiff after a verdict in favor of defendants on the negligence count involving the bus driver. The appeal from the denial of the motion to recuse is without merit.

## II

## MOTION FOR JUDGMENT AS A MATTER OF LAW

■ RIPTA contends that plaintiff presented no evidence in support of the premises-liability count which would justify a reasonable jury's finding in plaintiff's favor. In passing upon the denial of a motion for judgment as a matter of law, we must apply the same standard as the trial justice. We must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *DeChristofaro v. Machala*, 685 A.2d 258, 262 (R.I.1996).

■ In the case at bar, evidence presented by both plaintiff and RIPTA indicated that a large number of pedestrians, many of them potential passengers of RIPTA, crossed the turnaround every day. An expert witness for RIPTA testified that as these large buses turned around, there was a blind spot in the mirror utilized by the bus driver. Moreover, it is undisputed that there were no warning signs or markers of any kind directing pedestrians to safe areas and away from areas that might be dangerous. RIPTA's expert testified that plaintiff could have traveled through the blind spot and collided with the bus in approximately two seconds. The trial justice was correct in denying the motion for judgment as a matter of law upon the basis of the undisputed fact that there were no signs or demarcations that would direct pedestrians along a safe path.

The trial justice ruled as a matter of law that plaintiff was a passenger of RIPTA. He found that she had come upon the premises of RIPTA with the full intent of crossing those premises in order to reach a waiting shelter adjacent to Broad Street located on the RIPTA premises for the purpose of boarding a RIPTA bus that would come to the shelter via Broad Street. The correctness of this ruling will be considered later in this opinion.

This Court has held that a common carrier owes to a passenger a duty to exercise the highest degree of care that is consistent with the orderly conduct of its business. *Ellis v. Rhode Island Public Transit Authority*, 586 A.2d 1055, 1060 (R.I. 1991); *Shipman v. United Electric Railways Co.*, 68 R.I. 39, 42, 26 A.2d 478, 479 (1942); *Bosworth v. Union Railroad Co.*, 26 R.I. 309, 312, 58 A. 982, 983, 3 Ann. Cas. 1080 (1904); *Boss v. Providence & Worcester Railroad Co.*, 15 R.I. 149, 154, 1 A. 9, 11 (1885). The main thrust of RIPTA's argument is that plaintiff in this case was not a passenger since she had not actually boarded a RIPTA bus. In support of that argument RIPTA cites *Villa v. United Electric Railways Co.*, 51 R.I. 384, 155 A. 366, 75 A.L.R. 282 (1931). In that case, the Court held that a potential passenger who stumbled over a loose cobblestone on a public highway as she approached a streetcar did not have the status of a passenger. However, in analyzing the question, the Court stated the following general principle:

> "She had done nothing which gave defendant any right to control her actions nor had she placed herself in the care of defendant. She had not *entered the premises* or the vehicle of the carrier; she could stop or proceed on the highway as she chose." 51 R.I. at 387, 155 A. at 367, 75 A.L.R. at 284. (Emphasis added.)

■ In the case at bar, plaintiff had entered upon the premises of RIPTA with the intention of becoming a passenger after she reached the waiting shelter on Broad Street. When she entered the turnaround area that was subject to the control of RIPTA, she became a passenger for all practical purposes to whom the highest degree of care was owed. *See Aschenbrenner v. United States Fidelity & Guar-*

*anty Co.,* 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137 (1934).

The trial justice held that a jury could easily conclude that a sign or a walkway could have been placed at the site and that failure to implement modest safety precautions at a reasonable expense to keep pedestrians away from the paths of large buses that had been described by RIPTA's own expert witness as having blind spots would be inconsistent with the duty of care owed to plaintiff. A reasonable jury could find that RIPTA was aware that more than 200 people crossed the turnaround each day, many of whom boarded buses in the turnaround. These pedestrians included elderly persons such as plaintiff, who was seventy-seven years of age at the time of the accident, and children. Just prior to this accident, testimony indicated that bus driver Jones had asked children to leave the lot where they had been playing behind a parked bus. From this evidence a reasonable juror could draw the inference, as must the trial justice on a motion for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure, that RIPTA could have foreseen the presence of such pedestrians and the significant probability of their becoming seriously injured by contact with a large bus. The trial justice properly suggested that the cost of marking such zones of safety and danger would have been modest. He was correct in denying the motion for judgment as a matter of law.

## III

## THE MOTION FOR A NEW TRIAL

### A. Need for Expert Testimony

RIPTA argues in support of its motion for new trial that plaintiff failed to sustain her burden of proof in respect to the premises-liability allegations. It suggests that although there were no signs or markings at the turnaround, plaintiff failed to introduce evidence concerning whether these precautions were needed. RIPTA asserts that expert testimony was required

to determine whether RIPTA complied with the applicable standard of care.

■ In the case at bar we hold that RIPTA owed to plaintiff, while she was on premises owned and controlled by this common carrier, a duty to exercise the highest degree of care and foresight consistent with the orderly conduct of its business. Expert testimony may be admitted when such testimony will aid the trier of fact in understanding a subject matter beyond the ken of a lay person of ordinary intelligence. *Allen v. State,* 420 A.2d 70, 72–73 (R.I.1980). In that case we went on to remark that "[i]f all the facts and circumstances can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as is the expert, there is no necessity for the expert testimony.'" *Id.* at 73. The principle enunciated in *Allen* has been codified in Rule 702 of the Rhode Island Rules of Evidence. Rule 702 provides as follows:

"Testimony by experts. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

■ In commenting upon this subject, the trial justice concluded that expert testimony was not needed and that the issue was one of "rudimentary safety by way of signs or designated pathways for the pedestrians," not something like a complicated medical-malpractice case, which is beyond the common knowledge of the jury. The trial justice observed that the jury could from its collective experience determine whether a bus-turnaround area held open to the public is safe and properly maintained. We agree with the trial justice's conclusion. The conditions described by the various witnesses pertaining to this bus turnaround were not complex or be-

yond the understanding of the ordinary intelligent lay juror.

## B. Duty of Care

■ The plaintiff has argued in her brief and in a supplemental brief filed after oral argument that counsel for RIPTA failed to preserve the issue of the duty of care set forth in the trial justice's instruction because he did not specifically object to that instruction pursuant to Rule 51(b) of the Superior Court Rules of Civil Procedure. We are of the opinion that counsel for RIPTA did preserve this issue sufficiently to argue the point on appeal.

Counsel for RIPTA made the following comment at a sidebar conference following the trial justice's instruction to the jury: "Mr. [Bengtson]: Again, I would object to the Court's failure not to instruct on number two which is the duty of reasonable care. We've argued this out of the presence of the jury."

Request number two as suggested by counsel clearly stated that "RIPTA owed the plaintiff a duty to use reasonable care to keep their premises in a safe condition for the purpose of the invitation extended to the plaintiff."

We have stated in prior cases that referring to a large number of requested instructions in numerical fashion is not sufficient to call the trial justice's attention to the particular basis for said instruction. *Allen v. D'Ercole Construction Co.,* 104 R.I. 362, 371–72, 244 A.2d 864, 870 (1968). However, in the case at bar, counsel for RIPTA had argued this question in support of a motion for judgment as a matter of law and also did call the trial justice's attention to the fact that this proposed instruction set forth a standard of reasonable care as opposed to the greater degree of care owed by a common carrier to a passenger.

It should also be noted that the trial justice, after hearing an objection from counsel for RIPTA on the standard of care relating to the operation of the bus, sug-

gested, "[y]ou can just put your numbers on the[,]" indicating that counsel might refer to numbered instructions that were not given. A moment later, the objection was raised to the court's failure not to instruct "on number two, which is the duty of reasonable care. We've argued this out of the presence of the jury."

We have recently stated that we shall not interpret Rule 51(b) so rigidly as to overlook potential trial errors when requests for instructions were contained in a pretrial memorandum. *See Dyson v. City of Pawtucket,* 670 A.2d 233, 237 (R.I.), *cert. denied,* 517 U.S. 1192, 116 S.Ct. 1682, 134 L.Ed.2d 784 (1996). We are of the opinion that this issue was sufficiently described to the trial justice following his instructions as well as on numerous occasions prior to the giving of the instructions to call his attention to the disagreement of counsel with the scope of the duty set forth in the instructions to the jury, namely, the highest degree of care as opposed to refraining from ordinary negligence.

■ Having said this, we are persuaded that *Villa* supported the trial justice's determination that a common carrier owes to a potential passenger the heightened duty of care when the passenger enters upon premises owned and controlled by the carrier.

RIPTA also cites *Gereau v. Parenteau,* 78 R.I. 314, 317, 82 A.2d 396, 398 (1951). In that case this Court held that a plaintiff who was struck by a car in approaching a for-hire car was not "a passenger" in the legal sense despite the existence of a contract for the plaintiff's transportation. This Court suggested that in order for the carrier-passenger relationship to be created, some overt act must be taken, such as actually reaching for the handle of the door, thereby placing a person under the control of the carrier.

In the case at bar we believe that the overt act taken by plaintiff was her entry upon premises owned and controlled by RIPTA. In other jurisdictions courts have

recognized that a passenger or a potential passenger who enters a depot or station owned and controlled by a common carrier with the immediate intention of becoming a passenger is owed the highest degree of care consistent with the ordinary conduct of the carrier's business. *See Galehouse v. Minneapolis, St. P. & S.S. M. Ry. Co.*, 22 N.D. 615, 135 N.W. 189 (1912); *Johns v. Charlotte, C. & A.R. Co.*, 39 S.C. 162, 17 S.E. 698 (1893). Consequently we conclude that the trial justice did not err in his instructions relating to the duty of care owed by RIPTA to plaintiff.

## IV

## PLAINTIFF'S MOTION FOR NEW TRIAL

Even though the trial justice had ruled in *Kelly I* that no reasonable jury could have found that bus driver Jones was completely without fault in this accident, he came to a different conclusion on the basis of the evidence presented at the second trial. At the conclusion of the evidence in the second trial, the trial justice observed, after reviewing the testimony of the various witnesses for both sides and exercising his independent judgment, that the jury could well have found that plaintiff was not struck by the right-front portion of the bus as he had concluded following the evidence in *Kelly I*. He determined that a jury could have properly found that plaintiff inadvertently walked into the side of the bus at a spot that was not visible to bus driver Jones (a blind spot on the right-hand side). When the trial justice determined that a reasonable jury could have so found, he concluded that Jones had done what he had been trained to do and had not been at fault at all in this incident.

■ Even though this finding is 180 degrees opposite to the finding he made in *Kelly I*, we must still accord to the trial justice *our* usual deferential standard of review. When a trial justice has reviewed the evidence and commented on the credibility of the witnesses as he did in this case

(finding Jones to be credible and plaintiff to be less credible owing to her advanced age), this Court will not disturb such findings unless the trial justice has overlooked or misconceived material and relevant evidence or was clearly wrong. *Morrocco v. Piccardi*, 674 A.2d 380, 382 (R.I.1996).

■ In the case at bar our review of the record indicates that the evidence presented at the second trial was found by the trial justice to be more persuasive and supportive of the jury's verdict than the evidence presented in *Kelly I*. He did not overlook or misconceive material and relevant evidence, nor was he otherwise clearly wrong. We therefore sustain his denial of the plaintiff's motion for a new trial and reject the plaintiff's challenge on this issue.

## CONCLUSION

For the reasons stated, we deny and dismiss the defendants' appeal from the refusal of the trial justice to recuse himself from presiding at the trial of this case. We deny and dismiss RIPTA's appeal from the refusal of the trial justice to grant its motion for judgment as a matter of law on the premises-liability issue. We also deny RIPTA's appeal from the denial of its motion for a new trial on the premises-liability issue. We deny and dismiss the plaintiff's appeal from the denial of her motion for a new trial on her negligence claim against the bus driver and RIPTA for the negligent operation of the bus. We affirm the judgment entered in the Superior Court, to which we remand the papers in this case.