Stephen MATTATALL

v.

STATE of Rhode Island.

No. 2005–318–Appeal.

Supreme Court of Rhode Island.

May 29, 2008.

Paula Rosin, Esq., Providence, for Plaintiff.

Virginia M. McGinn, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The applicant, Stephen Mattatall, appeals to this Court from the denial of his application for postconviction relief. On appeal, the applicant contends: (1) that the hearing justice erred in declining to recuse himself with respect to Mr. Mattatall's application for postconviction relief; and (2) that the *Alford*[1] plea made by applicant in 1979 when faced with a reckless driving charge was not made knowingly, intelligently, and voluntarily, and therefore should not have been used as a predicate for sentencing the applicant under the habitual offender statute when, several years later, he was convicted of second-degree murder.

This case came before the Supreme Court for oral argument on April 8, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the memoranda submitted by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the case should be decided at this time.

For the reasons set forth below, we affirm the judgment of the Superior Court.

### Facts and Travel

In 1983, applicant was charged with the murder of one John Scanlon, whose body had been found in applicant's home on the morning of September 24, 1982. Following a jury trial, applicant was convicted of murder in the second degree, and he was sentenced to a term of forty years imprisonment, with thirty years to serve and the balance suspended with probation. The trial justice also imposed an additional ten-year sentence pursuant to the habitual offender statute.[2] The applicant appealed his conviction to this Court, which reversed and remanded the case for a new trial. *State v. Mattatall*, 510 A.2d 947 (R.I.1986).[3]

A second jury trial, which began in September of 1987, ended in a mistrial due to

---

**1.** *See North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *see also* note 4, *infra.*

**2.** General Laws 1956 § 12–19–21 (commonly referred to as the "habitual offender statute") provides in pertinent part:

"(a) If any person who has been previously convicted in this or any other state of two (2) or more felony offenses arising from separate and distinct incidents and sentenced on two (2) or more occasions to serve a term in prison is, after the convictions and sentences, convicted in this state of any offense punished by imprisonment for more than one year, that person shall be deemed a 'habitual criminal.' Upon conviction, the person deemed a habitual criminal shall be punished by imprisonment in the adult correctional institutions for a term not exceeding twenty-five (25) years, in addition to any sentence imposed for the offense of which he or she was last convicted."

**3.** After granting the state's petition for certiorari, the United States Supreme Court directed this Court to reconsider one aspect of its decision (*viz.,* the right to counsel issue) in light of the decision in *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). *Rhode Island v. Mattatall*, 479 U.S. 879, 107 S.Ct. 265, 93 L.Ed.2d 243 (1986) (mem.). Upon reconsideration, this Court reaffirmed its initial ruling and remanded the case to the Superior Court for a new trial. *State v. Mattatall*, 525 A.2d 49 (R.I.1987).

applicant's behavior in the courtroom, for which he was held in contempt of court.

Finally, following a third jury trial in 1988, applicant was found guilty of second-degree murder and was sentenced to a term of sixty years imprisonment, with fifty years to serve and the balance suspended with probation. The trial justice also sentenced applicant to an additional twenty-year term pursuant to his status as an habitual offender. This Court affirmed his conviction in *State v. Mattatall*, 603 A.2d 1098 (R.I.1992); that opinion contains a thorough recitation of the facts and procedural history with respect to applicant's trial and eventual conviction of second-degree murder.

After this Court's affirmance of his conviction, applicant filed a *pro se* application for postconviction relief pursuant to G.L. 1956 § 10–9.1–1, alleging over thirty separate grounds for relief, including prosecu-torial misconduct and "[c]onspiracy and [i]neffectiveness." A hearing was held on September 28, 2004, at the conclusion of which the hearing justice found that the application was "wholly meritless, groundless, and must be denied." An order reflecting that determination was entered on October 7, 2004.

 Before his first application was denied by the Superior Court, applicant filed a second *pro se* application for postconviction relief on November 29, 2001. In that second application, he contended that the enhancement of his second-degree murder sentence pursuant to the habitual offender statute was improperly predicated in part on his prior felony conviction for reckless driving, death resulting. That conviction resulted from applicant's *Alford* plea,[4] but his second application contended that that plea was not made knowingly, voluntarily, and intelligently. The appli-

---

**4.** Two previous convictions triggered applicant's classification as an habitual offender pursuant to § 12–19–21.

Although it is not entirely clear from the record before us, it appears that the first conviction relied on by the trial justice was for assault with a dangerous weapon; that conviction is not at issue in the instant case. *See State v. Mattatall*, 603 A.2d 1098, 1116 (R.I.1992).

The second conviction was for reckless driving, death resulting, pursuant to G.L. 1956 § 31–27–1. In 1979, the applicant was found guilty by a jury of reckless driving, death resulting; however, the trial justice vacated the jury's verdict and granted applicant's motion for a new trial. In so doing, the trial justice stated that it was his belief that there was contradictory evidence as to whether or not applicant had been the operator of the motor vehicle that was involved in the accident. Following the grant of the motion for a new trial, applicant immediately informed the trial justice that he wished to enter an *Alford* plea, which the court accepted.

The United States Supreme Court in *Alford* upheld a procedure whereby a court may accept a knowing and voluntary plea of guilty from a defendant, even though the defendant maintains his or her innocence, provided that the trial justice determines that the state has presented a factual foundation for the plea on the basis of evidence other than the defendant's own admission. *Alford*, 400 U.S. at 36–38, 91 S.Ct. 160; *State v. Fontaine*, 559 A.2d 622, 624 (R.I.1989); *see also Azevedo v. State*, 945 A.2d 335, 338–39 (R.I.2008); *Armenakes v. State*, 821 A.2d 239, 242 (R.I.2003); *State v. Mattatall*, 603 A.2d 1098, 1118 n. 6 (R.I.1992). As this Court has made clear on numerous occasions:

"[A]lthough a criminal defendant may be relieved of the embarrassment of admitting participation in the crime or comforted by the fact that he or she has maintained his innocence and the victim sometimes is left in a quandary about what occurred during the plea proceeding, the result is abundantly clear: the defendant stands convicted of the crime." *Armenakes*, 821 A.2d at 242; *see also Mattatall*, 603 A.2d at 1118.

A conviction based on an *Alford* plea may later be used "for any legitimate purpose, including sentencing factors and enhancement, impeachment, and in collateral proceedings, such as deportation." *Armenakes*, 821 A.2d at 242.

cant also argued that, because he "didn't commit" the offense of reckless driving, death resulting, "he should not and cannot be deemed a repeat offender" for purposes of sentencing pursuant to the habitual offender statute.

Although applicant filed his second application for postconviction relief in Kent County, the matter was subsequently transferred to Providence County to the justice of the Superior Court who had presided over the third murder trial. The applicant then moved to recuse that justice and to have his application assigned for hearing by another judicial officer, whom he specifically identified. In support of that two-pronged motion, applicant alleged: (1) that the justice to whom the case was assigned was biased against him and (2) that the trial justice who accepted applicant's *Alford* plea in the 1979 reckless driving case should rule on any challenge to that plea. On May 9, 2002, the hearing justice entered an order denying applicant's motion to recuse and to reassign.[5]

Thereafter, on October 26, 2005, the hearing justice denied Mr. Mattatall's second application for postconviction relief. The hearing justice noted that applicant had previously challenged the use of his 1979 conviction as a predicate for the imposition of an additional sentence pursuant to the habitual offender statute, which ar-

gument had been rejected by both the Superior Court and subsequently by this Court in *State v. Mattatall*, 603 A.2d 1098 (R.I.1992). Accordingly, the hearing justice concluded that consideration of the second application was precluded by the doctrine of *res judicata*. The hearing justice also stated that he had heard and denied applicant's previous application for postconviction relief and that he could "conceive of no grounds nor any compelling interests of justice that entitle [applicant] to another post-conviction entreaty."[6] It is from this denial of his second application for postconviction relief that applicant timely appealed.

On appeal, applicant contends that the hearing justice erred in denying his motion to recuse and his motion to have his application for postconviction relief reassigned. The applicant's specific contentions are: (1) that "it is neither appropriate nor the normal procedure for someone other than the judge who took the plea that is being challenged on post-conviction relief to consider a defendant's application, unless the original judge is unavailable for reasons such as death or retirement;" (2) that assignment of an application for postconviction relief to the original trial justice is mandatory; and (3) that the justice who denied his second application for postcon-

---

5. The applicant sought interlocutory review by this Court of the denial of his motion to recuse and to reassign; his petition for certiorari was denied on May 27, 2004.

6. In rejecting applicant's second postconviction relief application, the court also observed "that the offense that [applicant] has targeted was committed some twenty-four years ago." Citing and quoting from this Court's decision in *Raso v. Wall*, 884 A.2d 391, 394 (R.I.2005), the hearing justice went on to state in dictum that the " 'venerable defense of laches' may well be an appropriate vehicle that would, in any event, preclude the defendant's latest imprecation."

We agree with the hearing justice's assessment concerning the defense of laches. In our estimation, it would have been entirely appropriate for the state to have raised the affirmative defense of laches in an instance such as this where an applicant is challenging an event that took place so many years ago. There comes a time when the "prejudice" precondition to a finding of laches can be presumed. *Northern Trust Co. v. Zoning Board of Review of Westerly*, 899 A.2d 517, 520 (R.I.2006) (mem.) ("Given the egregious nature of the delay * * *, presuming prejudice to [the adverse party] gives us no pause.").

viction relief should have recused himself because, in applicant's estimation, he was biased against applicant.

The applicant also contends that his 1979 *Alford* plea was not made knowingly, intelligently, and voluntarily and that his claim at to this issue is not precluded by the doctrine of *res judicata.*

### Standard of Review

■ Section 10–9.1–1 provides that the remedy of postconviction relief is available to any person who has been convicted of a crime and who thereafter alleges either that the conviction violated the applicant's constitutional rights or that the existence of newly discovered material facts requires vacation of the conviction in the interest of justice.[7] *Larngar v. Wall,* 918 A.2d 850, 855 (R.I.2007). In reviewing a hearing justice's determination with respect to an application for postconviction relief, this Court will not disturb the findings of the hearing justice "absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence." *State v. Thomas,* 794 A.2d 990, 993 (R.I.2002); *see also Gonder v. State,* 935 A.2d 82, 84–85 (R.I.2007); *Doctor v. State,* 865 A.2d 1064, 1067 (R.I.2005); *Ouimette v. State,* 785 A.2d 1132, 1135 (R.I. 2001).

■ At the same time, however, "questions of fact concerning whether a defendant's constitutional rights have been infringed, and mixed question of law and fact with constitutional implications, are reviewed *de novo.*" *Thomas,* 794 A.2d at

993 (internal quotation marks omitted); *see also Gonder,* 935 A.2d at 85. Nevertheless, as we have emphasized on numerous occasions, in conducting our review, we still accord great deference to a hearing justice's findings of historical fact and to inferences drawn from those facts, even when the *de novo* standard is applied with respect to issues of constitutional dimension. *See Gonder,* 935 A.2d at 85; *Thomas,* 794 A.2d at 993; *Ouimette,* 785 A.2d at 1135.

### Analysis

### I

### The Motion to Recuse and Reassign

Before we address applicant's contentions, we pause to note that he has not provided a transcript of the hearing on his motion to recuse and reassign.[8] This Court has declared on numerous occasions that it is " 'risky business' for a party to appeal without providing the Court with a transcript of the Superior Court proceedings." *West v. Town of Narragansett,* 926 A.2d 1021, 1023 (R.I.2007) (mem.); *see also Lavoie v. North East Knitting, Inc.,* 918 A.2d 225, 228 (R.I.2007); *Sentas v. Sentas,* 911 A.2d 266, 270 (R.I.2006); *731 Airport Associates, LP v. H & M Realty Associates, LLC, ex rel. Leef,* 799 A.2d 279, 282 (R.I.2002). Nevertheless, in this instance, the Superior Court's order denying applicant's motion to recuse and reassign sufficiently sets forth the hearing justice's reasoning to permit us to review same.

---

7. An applicant who files an application for postconviction relief bears the burden of proving, by a preponderance of the evidence, that such relief is warranted. *See, e.g., Gonder v. State,* 935 A.2d 82, 84 n. 1 (R.I.2007); *Larngar v. Wall,* 918 A.2d 850, 855 (R.I.2007); *see also Estrada v. Walker,* 743 A.2d 1026, 1029 (R.I.1999); *Jacques v. State,* 669 A.2d 1124, 1129 (R.I.1995).

8. The applicant also failed to provide this Court with the transcript of the sentencing hearing during which the trial justice made the statements that applicant alleges were biased and that were the basis for his motion to recuse.

## A

### Recusal

■ The applicant contends that the hearing justice should have recused himself because his impartiality was uncertain given the fact that, when sentencing him in the underlying murder case, the hearing justice had made a number of unfavorable comments with respect to applicant's character and credibility. In support of his claim, applicant points to Article VI, Canon 3E of the Supreme Court Rules of Judicial Conduct, which states that a judicial officer is required to "disqualify himself or herself in a proceeding in which the [judicial officer's] impartiality might reasonably be questioned, including but not limited to instances where * * * (a) the [judicial officer] has a personal bias or prejudice concerning a party * * *."

■ This Court has stated on several occasions that judicial officers are obligated to recuse if they are "unable to render a fair or an impartial decision in a particular case." *Kelly v. Rhode Island Public Transit Authority*, 740 A.2d 1243, 1246 (R.I.1999); *see also Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 185 (R.I.2008); *In re Antonio*, 612 A.2d 650, 653 (R.I.1992). "At the same time, however, justices have an equally great obligation **not** to disqualify themselves when there is no sound reason to do so." *Ryan*, 941 A.2d at 185; *see also Kelly*, 740 A.2d at 1246; *State v. Clark*, 423 A.2d 1151, 1158 (R.I.1980). The burden is on the party seeking recusal to establish that the judicial officer possesses a "personal bias or prejudice by reason of a preconceived or settled opinion of a character calculated to impair his [or her] impartiality seriously and to sway his [or her] judgment." *Cavanagh v. Cavanagh*, 118 R.I. 608, 621, 375 A.2d 911, 917 (1977); *see also*

*Ryan*, 941 A.2d at 185; *Kelly*, 740 A.2d at 1246.

In support of his contention that the hearing justice was biased against him, applicant points to two statements made by the hearing justice when he sentenced applicant in 1988 pursuant to the habitual offender statute. First, after citing fourteen separate instances of misconduct committed by applicant between August of 1985 and May of 1987, the trial justice stated:

"[W]hat clearly surfaces from the various reports of misconduct is an individual who reflects an attitude of hostility and a propensity for violent and volatile behavior, with numerous instances of abusive and threatening conduct."

The applicant also points to the trial justice's observations with respect to applicant's conduct during the murder trial:

"[T]he defendant lied under oath at trial. It's clearly implied by the jury's verdict. If it wasn't clearly implied, then you need only look further to the Defendant's spurious motions to take a sodium pentothal test to somehow support a new story that he has as to how the victim was killed."

In his order denying applicant's motion to recuse in the instant case, the hearing justice made the following observation:

"Every sentencing judge is affirmatively obliged to set forth reasons for imposing a sentence, particularly where, as here, the habitual offender statute mandates that an additional incarceration penalty be imposed.

"When a defendant is convicted of murder and is subject to increased incarceration, it may be expected that the sentencing judge's remarks will, perforce, be somewhat less than flattering

in fashioning an appropriate sentence."[9]

We are in complete agreement with the hearing justice's statement that "[r]ecusal does not thereafter lie simply because the court has carried out its judicial responsibility of explaining the reasons for that sentence." Rather than making biased or prejudicial statements about applicant,[10] the hearing justice, in accordance with what this Court has encouraged judicial officers to do, was simply articulating his reasons for enhancing applicant's sentence in accordance with the habitual offender statute.

Upon our review of the record, it is utterly clear to us that the statements made by the hearing justice during the 1988 sentencing proceeding reflect neither prejudice nor a personal bias against applicant; accordingly, we conclude that the hearing justice's decision not to recuse with respect to the second application for postconviction relief was proper.

## B

### Reassignment

■ The applicant contends that his second application for postconviction relief should have been considered by the trial justice who accepted his *Alford* plea in 1979. We disagree.

Rule 2.3(d)(4) of the Superior Court Rules of Practice provides as follows:

"Applications for post-conviction relief shall be assigned by the clerk to the formal and special cause calendar. The justice assigned to the calendar shall submit the application, as the case may be, for disposition by the justice who presided at the trial of the applicant. In any case where the trial justice is no longer a member of the court, the justice assigned to the calendar shall submit the application for disposition, on a rotational basis, to the justices assigned to the trial calendar."

We construe the Rule's reference to "the justice who presided at the trial of the applicant" to mean the justice who presided at the trial concerning which the applicant is aggrieved—which in this case would be the 1988 trial that resulted in applicant's sentencing as an habitual offender. That is exactly what happened in this case: both of Mr. Mattatall's postconviction relief applications were, in fact, assigned to the justice who presided over the murder trial and who sentenced applicant pursuant to his conviction for second-degree murder at that trial, from which sentence (specifically the additional sentence imposed in view of applicant's status as an

9. Although this Court has held that a sentencing justice is not affirmatively *required* to articulate his or her reasons for imposing a particular sentence, we have stated that "a statement of reasons by the trial justice in justification of his departure from the sentence that would normally be expected in response to a given offense might well be of assistance in explaining to an appellate court why no abuse of discretion has taken place." *State v. Small,* 122 R.I. 634, 639 n. 5, 410 A.2d 1336, 1339 n. 5 (1980).

In addition, this Court has often stated that sentencing justices must take into account a variety of factors in fashioning an appropriate sentence. *See, e.g., State v. Brigham,* 666 A.2d 405, 406 (R.I.1995) ("In determining a fair sentence, a trial justice considers various factors including the severity of the crime, the defendant's personal, educational, and employment background, the potential for rehabilitation, societal deterrence, and the appropriateness of the punishment.").

10. As an example of such an instance, see *State v. Nordstrom,* 122 R.I. 412, 413–14, 408 A.2d 601, 602 (1979), where this Court granted the defendants a new trial because the trial justice's disparaging statements uttered outside of the courtroom concerning the defendants were inconsistent with the impartiality required of judicial officers.

habitual offender) applicant currently seeks relief.

Even if, as applicant contends, his second application for postconviction relief should have been heard by the trial justice who accepted his *Alford* plea in 1979, Rule 2.3(d)(4) clearly and unambiguously states that, if a trial justice "is no longer a member of the court," then the application should be assigned to another justice of the Superior Court. That is precisely the situation with which we are now confronted. Having thereafter assumed a different judicial office, the Superior Court justice who presided at the time of the 1979 *Alford* plea was no longer a member of that court at the time when applicant's second application was filed.

Accordingly, we reject applicant's contention as it is wholly meritless.

## II

## The *Alford* Plea

■ We now turn to applicant's final claim of error—that his 1979 *Alford* plea [11] was not made knowingly, intelligently, and voluntarily and that the hearing justice in the instant case erred in determining that applicant's claim was precluded by the doctrine of *res judicata.*

The applicant argues that he "could not have raised his claim that his [*Alford*] plea to reckless driving was involuntary on direct appeal of his murder conviction, nor could he have raised it in connection with his [first] post-conviction application that sought to vacate his murder conviction." The applicant further contends that he was required to raise this issue by filing a postconviction relief application "directed at the plea itself." It is applicant's conten-

tion that he "has not yet had his day in court to which he is entitled on this claim."

■ In the postconviction relief context, the doctrine of *res judicata* is codified in § 10–9.1–8. *See Miguel v. State,* 924 A.2d 3, 4 (R.I.2007) (mem.); *Figueroa v. State,* 897 A.2d 55, 56 (R.I.2006) (mem.) (stating that § 10–9.1–8 "codifies the doctrine of *res judicata* as applied to petitions for post-conviction relief"); *Taylor v. Wall,* 821 A.2d 685, 688 (R.I.2003); *State v. De-Ciantis,* 813 A.2d 986, 993 (R.I.2003).

Section 10–9.1–8, which is entitled "Waiver of or failure to assert claims," provides:

"All grounds for relief available to an applicant at the time he or she commences a proceeding under this chapter *must be raised* in his or her original, or a supplemental or amended, application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, *may not be the basis for a subsequent application,* unless the court finds that in the interest of justice the applicant should be permitted to assert such a ground for relief." (Emphasis added.)

■ The *res judicata* doctrine "operates as an absolute bar to relitigation of the same issues between the same parties when a final judgment has been rendered." *Carillo v. Moran,* 463 A.2d 178, 182 (R.I. 1983); *see also Miguel,* 924 A.2d at 4; *Taylor,* 821 A.2d at 688. Furthermore, "[a] judgment on the merits in the first case not only is conclusive with regard to the issues that were actually determined

---

11. We pause to express our continuing doubt about the wisdom of allowing defendants to enter an *Alford* plea. This is an issue that we may revisit at a later time. *See Azevedo,* 945 A.2d at 338 (noting that "we question the wisdom and utility of this procedural vehicle").

but also precludes reconsideration of *all other issues that might have been raised in the prior proceeding."* *Carillo,* 463 A.2d at 182 (emphasis added); [12] *see also Miguel,* 924 A.2d at 4; *Taylor,* 821 A.2d at 688.

Section 10–9.1–8 contains a very limited and narrow exception to this otherwise absolute bar; that exception provides that issues which were "finally adjudicated or not so raised" may nonetheless be the basis for a subsequent application for post-conviction relief if the court finds it to be "in the interest of justice." *See Ramirez v. State,* 933 A.2d 1110, 1112 (R.I.2007) ("Under § 10–9.1–8, parties cannot bring forth new claims in subsequent applications that could have been, but were not, raised in the first postconviction-relief application—absent an 'interest of justice' showing."); *Miguel,* 924 A.2d at 4.

In his supplemental memorandum filed with this Court in accordance with Article VI, Rule 12A of the Supreme Court Rules of Appellate Procedure, applicant contends that the doctrine of *res judicata* does not preclude his arguments with respect to his 1979 *Alford* plea. The applicant contends that, because he sought to obtain a reversal of his conviction for second-degree

murder in his first postconviction relief application, his second application "concerned a different case and a different conviction." In other words, it is applicant's contention that his first application dealt with his conviction for murder while his second application dealt with his 1979 *Alford* plea. The applicant also contends that he "could not have raised his claim that his plea to reckless driving was involuntary * * * in connection with his [first] post-conviction application * * *."

In our judgment, these arguments are meritless and unavailing. The applicant could have, and certainly should have, raised his arguments with respect to his *Alford* plea in his first application for post-conviction relief. He did not do so, and we consider the contentions set forth in the second application for postconviction relief to be barred by virtue of the *res judicata* doctrine. Moreover, after considering the record, we are satisfied, as was the hearing justice, that there is no sufficient reason for us to analyze said contentions pursuant to the limited statutory "interest of justice" exception to the bar against successive applications for postconviction relief.[13] *See Miguel,* 924 A.2d at 4.

12. The quoted formulaic summary of the *res judicata* principle brings to mind the following poignant passage from John Greenleaf Whittier's famous poem, *Maud Muller* (1854):
"For of all sad words of tongue or pen,
"The saddest are these: 'It might have been.'"

13. Even if we were persuaded (and we are not) that the "interest of justice" exception referred to in G.L. 1956 § 10–9.1–8 required us in this case to address applicant's arguments with respect to his 1979 *Alford* plea, we would still conclude that his contentions are meritless. The transcript of the proceedings relative to the *Alford* plea indicates that applicant understood the significance of his entering an *Alford* plea and that he was doing so for reasons that he perceived as being beneficial to him. Moreover, in his memorandum

in support of his second application for postconviction relief, applicant reiterates the reasons that motivated him to enter an *Alford* plea.

It seems that applicant is not protesting the voluntariness of his 1979 *Alford* plea, but rather the fact that it was used several years later as a basis for sentencing him to additional incarceration pursuant to the habitual offender statute. This argument is similarly barred by the doctrine of *res judicata* in view of the fact that applicant raised such an argument on direct appeal from his second-degree murder conviction. In denying that appeal, this Court concluded that:
"When a defendant enters an *Alford* plea, which is accepted by the court, then such plea in a later judicial proceeding constitutes a conviction, irrespective of the fact

## Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court, and the papers in this case may be remanded to the Superior Court.

that the defendant maintains his innocence and does not stand up and confess guilt * * *. Because Mattatall's *Alford* plea was accepted in an earlier proceeding and judgment entered, the trial justice had every right to consider this conviction for purposes of the habitual-offender statute." *Mattatall,* 603 A.2d at 1118.