**STATE**

v.

**Ramondo HOWARD.**

No. 2009–240–C.A.

Supreme Court of Rhode Island.

June 29, 2011.

Lauren S. Zurier, Department of Attorney General, for State.

Catherine Gibran, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

PER CURIAM.

The defendant, Ramondo Howard, appeals from a judgment[1] entered after an adjudication of probation violation. On appeal, the defendant contends that the hearing justice committed the following errors: (1) "the hearing justice erred in failing to recuse himself from the case" and (2) "the hearing justice should have afforded defense counsel or Mr. Howard the opportu-

---

1. We note that the operative document in the record is entitled "judgment of conviction and commitment."

nity to address the court prior to pronouncing the sentence."

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the memoranda submitted by the parties, and the oral arguments of counsel, we are satisfied that this appeal may be decided without further briefing or argument.

For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

## I

### Facts and Travel

On October 24, 2005, a violation report was filed against defendant Ramondo Howard, alleging that he had violated the terms and conditions of his probation. At the time of the alleged violation, defendant was on probation as a result of four different sentences that had been meted out to him between 1995 and 2005. The alleged offenses underlying the violation report were two counts of vandalism/malicious injury to property and two counts of larceny under $500.

### A

### The Hearing on Defense Counsel's Motion to Withdraw

After the violation report was filed, but before the hearing with respect to same was held, defendant filed a *pro se* motion indicating (1) that he wished to release his attorney and (2) that he wanted new counsel to be appointed. The defendant attached to his *pro se* motion a copy of a complaint that he had filed against his attorney with this Court's Disciplinary Board.

On November 21, 2005, a hearing was held in the Superior Court. During that hearing, defendant's then-attorney indicated to the hearing justice [2] that defendant's violation hearing had previously been "continued so that [defendant] might consider the recommendation that the [c]ourt made for a sentence * * *." Mr. Howard's attorney also stated that defendant had previously informed him that he had filed a disciplinary complaint against the attorney; he then expressed his view that, if defendant had in fact done so, "that would represent a conflict of interest * * * for [the attorney] and [his] office."

The defendant then confirmed on the record that he had in fact filed a complaint against his attorney. He summarized his reasons for doing so as follows:

"I never agreed to think about any terms or sentence. I felt really betrayed and done wrong by his counsel. He never did anything I asked him, he never came to see me. He wasn't like a counsel, he was more like a prosecutor. I had to file this complaint."

The hearing justice responded to defendant in pertinent part as follows:

"One of the problems [your attorney] has in representing you is that you violate the law constantly and he is not a magician. He is not a miracle worker. He has to deal with the case as best he can. I can tell you, Mr. Howard, that I always listen to the attorneys when we have conferences in chambers and they are very wide-ranging conversations. I try to be as fair as I can, but when I looked at your cases and your record and your age, *I very quickly came to the conclusion that you need to be ware-*

2. All references to a hearing justice in this opinion are to the hearing justice who presided over the November 21, 2005 hearing that is referenced in the text.

*housed. I've given up hope on you because you just violate the law constantly.*

" * * *

"The more I look at your record, *the more I believe you are beyond rehabilitation.* So, [your attorney] really didn't have much to work with. That's because of a person you see every day in the mirror. He's the one that's got to solve this. [Your attorney] cannot." (Emphasis added.)

The hearing justice proceeded to excuse defendant's attorney and his office from responsibility for all matters involving defendant, and he asked the clerk to "select the next competent attorney off the appropriate list * * *."

## B

### The Motion to Recuse

Several weeks later, on January 5, 2006, another hearing was held in the Superior Court on various motions, including *pro se* motions filed by defendant. The hearing justice denied both a motion to recuse and a motion seeking a change in venue. In so doing, the hearing justice remarked as follows:

"Attached to the pro se motion filed by Mr. Howard[—]that is, the motion to appoint counsel[—]there is a handwritten letter or statement. He alleges that this justice made comments demeaning of him and reflect, quote, a predetermination of guilt, bias, and prejudice in violation of the judicial comments. I, quite frankly, don't know exactly what he's referring to and we're not going to explore those issues today.

"I have an obligation to hear the various criminal matters that come before the criminal judge assigned to [this court], and if a defendant could obtain a new judge by merely filing some type of conclusory allegation against the judge, very little would be accomplished, and certainly justice could not be accomplished. I'm certainly not going to recuse myself, at least at this juncture.

"Mr. Howard has asked for a change of venue. I don't understand why that would be. I don't know what the justification for that would be, so I'm going to deny that motion as well."

## C

### The Violation Hearing

On January 23 and January 30, 2006, a hearing was held in the Superior Court to determine whether or not Mr. Howard had violated the terms and conditions of his probation. At the conclusion of the hearing on January 30, the hearing justice determined that "[i]t would be impossible for [him] to not find Mr. Ramondo Howard to be a violator of the terms and conditions of his probation." On that same day, the hearing justice removed seven years of a previously imposed ten-year sentence and "continue[d] [defendant] on the same sentence with respect to the other three cases."[3] Judgment entered on February 27, 2006. The defendant filed a timely notice of appeal.

## II

### Standard of Review

■ As we have previously stated, a contention on appeal that a trial justice should have recused himself or herself due

---

**3.** Our review of the record suggests that there may have been a miscalculation with respect to the time remaining on defendant's suspended sentences. We therefore direct the Superior Court on remand to determine if there was such a miscalculation and, if there was, to make a correct calculation.

to bias or prejudice requires this Court to "scrutinize closely whatever is asserted to have disclosed prejudice of a character and in such degree as to work a disqualification." *State v. Nunes,* 99 R.I. 1, 5, 205 A.2d 24, 27 (1964).

### III

### Analysis

On appeal, defendant argues that the hearing justice should have recused himself because the hearing justice "demonstrated his lack of objectivity before the hearing even began;" he contends that the hearing justice "lacked the objectivity and impartiality to fairly hear and render judgment." Mr. Howard also argues that the hearing justice should have recused himself so as "to avoid the appearance of impropriety."

 "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *see also In re Union Leader Corp.,* 292 F.2d 381, 384 (1st Cir. 1961) ("From the general standpoint of the interest of justice, the right to be tried before an unbiased judge is * * * basic in our judicial system.") (internal quotation marks omitted). We have repeatedly stated that "judicial officers are *obligated* to recuse if they are unable to render a fair or an impartial decision in a particular case." *Mattatall v. State,* 947 A.2d 896, 902 (R.I.2008) (emphasis added) (internal quotation marks omitted); *see also State v. Mlyniec,* 15 A.3d 983, 998–99 (R.I.2011); *Ryan v. Roman Catholic Bishop of Provi-*

*dence,* 941 A.2d 174, 185 (R.I.2008); *In re Antonio,* 612 A.2d 650, 653 (R.I.1992) ("It is axiomatic that judges are obligated to recuse themselves in the event that they are unable to render fair and impartial decisions in their cases.").[4]

 The party seeking recusal bears the burden of establishing that "the judicial officer possesses a personal bias or prejudice by reason of a preconceived or settled opinion of a character calculated to impair his [or her] impartiality seriously and to sway his [or her] judgment." *Mattatall,* 947 A.2d at 902 (brackets in original) (internal quotation marks omitted); *see also Mlyniec,* 15 A.3d at 999; *Ryan,* 941 A.2d at 185.

 Contrary to what the state contends on appeal, the alleged bias or prejudice need not arise from an extrajudicial source. *See Ryan,* 941 A.2d at 185 n. 21; *see also Leonard v. Willcox,* 101 Vt. 195, 142 A. 762, 771 (1928) ("If bias or prejudice exists, so that impartiality is destroyed, its origin or reason is immaterial, and it does not matter whether it is warranted or unwarranted.").[5] In our opinion in *Ryan,* 941 A.2d at 185 n. 21, we quoted with approval certain language from the opinion of the United States Supreme Court in *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), in which that Court rejected the theory that *only* extrajudicial sources could serve as the basis for disqualification. We believe that that language bears repeating in the context of the case at bar:

> "It is wrong in theory, though it may not be too far off the mark as a practical

---

**4.** We have also recognized the "equally great obligation **not** to disqualify * * * when there is no sound reason to do so." *Mattatall v. State,* 947 A.2d 896, 902 (R.I.2008) (emphasis in original) (internal quotation marks omitted); *see also State v. Mlyniec,* 15 A.3d 983, 999 (R.I.2011); *Ryan v. Roman Catholic Bish-*

*op of Providence,* 941 A.2d 174, 185 (R.I. 2008).

**5.** The Vermont case of *Leonard v. Willcox,* 101 Vt. 195, 142 A. 762 (1928), was quoted with approval by this Court in *State v. Nunes,* 99 R.I. 1, 5, 205 A.2d 24, 27 (1964).

matter, to suggest, as many opinions have, that 'extrajudicial source' is the *only* basis for establishing disqualifying bias or prejudice. It is the only *common* basis, but not the exclusive one, since it is not the *exclusive* reason a predisposition can be wrongful or inappropriate. A favorable or unfavorable predisposition can also deserve to be characterized as 'bias' or 'prejudice' because, even though it springs from the facts adduced or the events occurring at trial, it is **so extreme as to display clear inability to render fair judgment.**" *Liteky*, 510 U.S. at 551, 114 S.Ct. 1147 (final emphasis added).

The state has also cited to *Raheb v. Lemenski*, 115 R.I. 576, 580, 350 A.2d 397, 400 (1976), in support of the proposition that "[a]n adverse decision in which the reasoning is expressed in colorful or caustic language does not constitute prejudice." In addition, the state has cited to *State v. Crescenzo*, 114 R.I. 242, 261, 332 A.2d 421, 432 (1975), in support of the proposition that "[p]rejudice is not established because [the judge] has made his [or her] observations in language not used by the diplomatic corps."

■ After carefully reviewing the record, it is our opinion that the instant case is readily distinguishable from *Raheb* and *Crescenzo*. The hearing justice in the case before us did not simply render an adverse decision with respect to Mr. Howard using "colorful or caustic language" or "language

not used by the diplomatic corps;" it is the opinion that he expressed, and the time at which he chose to convey it, rather than his choice of language, that suggest the appearance of bias and a preconceived notion about the merits of the case.

During the hearing on November 21, 2005,[6] *before Mr. Howard's violation hearing had even begun*, the hearing justice expressed a blunt and unequivocal belief that Mr. Howard "need[ed] to be warehoused" and was "beyond rehabilitation." Such views, even though harshly and caustically expressed, would likely not have warranted the hearing justice's recusal had he expressed them *after* he had fairly conducted the violation hearing and then adjudged defendant to be a violator of his probation or had he expressed them in the context of determining how much of defendant's suspended sentence to remove.[7] However, in view of the fact that the hearing justice chose to express these opinions *prior to the commencement* of the violation hearing, our ineluctable conclusion is that the hearing justice displayed what a detached observer might well consider to be a "clear inability to render fair judgment." *See Liteky*, 510 U.S. at 551, 114 S.Ct. 1147.

In the instant case, regardless of whether or not the hearing justice was, in fact, "unable to render a fair or an impartial decision" in defendant's case, in view of the point in time at which the hearing justice expressed his unequivocal views about Mr. Howard, it was incumbent upon him to

---

**6.** See Part "IA" of this opinion, *supra*.

**7.** It should be noted that the temporal circumstances in which the contested words were uttered in both *State v. Crescenzo*, 114 R.I. 242, 332 A.2d 421 (1975), and *Raheb v. Lemenski*, 115 R.I. 576, 350 A.2d 397 (1976), stand in stark contrast to the temporal circumstances in the present case. In *Crescenzo*, the "colorful or caustic language" directed at the defendant was delivered as the hearing justice was deciding a motion for new trial—a

point in time at which "a trial justice is bound under our law to [weigh] the evidence and assess the credibility of the witnesses." *Crescenzo*, 114 R.I. at 260, 332 A.2d at 431–32. In *Raheb*, the "colorful or caustic language" of the trial justice was directed at one of the litigants at the conclusion of a nonjury trial, as the trial justice was announcing his decision and thereafter. *Raheb*, 115 R.I. at 580, 350 A.2d at 399.

thereafter recuse in order to avoid any doubt on the part of defendant or others as to his ability "to render a fair or an impartial decision." *See Mattatall,* 947 A.2d at 902 (internal quotation marks omitted).[8]

Accordingly, while we certainly appreciate the extent to which the comments directed by the hearing justice towards Mr. Howard prior to his violation hearing were the natural product of the frustrations that sometimes affect a judicial officer,[9] we nevertheless believe that he erred in declining to recuse under the circumstances of this case. That error was so fundamental that reversal is called for.[10]

### IV

### Conclusion

For the reasons set forth in this opinion, we vacate the judgment of the Superior Court. The record in this case may be returned to that tribunal.

---

8. The Supreme Court of the United States has discussed the extent to which the very appearance of bias, prejudice, or partiality can undermine the effectiveness of our judicial system. For example, in *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988), that Court stated:
 "[T]he judge is not called upon to perform an impossible feat. Rather, he is called upon * * * to take the steps necessary to maintain public confidence in the impartiality of the judiciary." Id. at 861, 108 S.Ct. 2194.
 "We must continuously bear in mind that to perform its high function in the best way justice must satisfy the appearance of justice." Id. at 864, 108 S.Ct. 2194 (internal quotation marks omitted).

9. What this Court wrote decades ago has not ceased to be relevant:

"[J]udicial officers must keep their minds open until the entire case is concluded * * *. *This duty often runs counter to natural human reaction.* Nevertheless, it is required in order to vindicate our system of criminal adjudication." *State v. Nordstrom,* 122 R.I. 412, 414, 408 A.2d 601, 602–03 (1979) (emphasis added).

10. Having determined that Mr. Howard's judgment should be vacated on the basis of the hearing justice's decision not to recuse himself, we need not and specifically decline to address the other issue raised on appeal by defendant. *See Grady v. Narragansett Electric Co.,* 962 A.2d 34, 41 n. 4 (R.I.2009) (noting this Court's "usual policy of not opining with respect to issues about which we need not opine").