June 20, 2025

**Supreme Court**

No. 2022-79-M.P.
(PM 21-2362)

(Concurrence begins on
Page 10)

Michael Lambert            :

        v.                 :

Wayne T. Salisbury, Jr. et al.       :

NOTICE:   This opinion is subject to formal revision
before publication in the Rhode Island Reporter.  Readers
are requested to notify the Opinion Analyst, Supreme
Court of Rhode Island, 250 Benefit Street, Providence,
Rhode Island 02903, at Telephone (401) 222-3258 or
Email    opinionanalyst@courts.ri.gov,    of    any
typographical  or  other  formal  errors  in  order  that
corrections may be made before the opinion is published.

Michael Lambert                    :

v.                    :

Wayne T. Salisbury, Jr. et al.[1]          :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  This case came before the Supreme Court pursuant to a writ of certiorari filed by the state, seeking review of a Superior Court decision that granted an application for postconviction relief that had been filed by the applicant, Michael Lambert.  The state contends before this Court that the hearing justice erred in ordering the Parole Board to immediately release Mr. Lambert on parole to the community as a consequence of the fact that the hearing justice had determined that Mr. Lambert was eligible for parole as a

---

[1]      The petition in this action named as a defendant Patricia Coyne-Fague, in her official capacity as the Director of the Rhode Island Department of Corrections.  However, Ms. Coyne-Fague has since been succeeded by Wayne T. Salisbury, Jr., in his official capacity as the Director of the Rhode Island Department of Corrections. *See* Super. R. Civ. P. 25(d).

- 1 -

result of the aggregation of his life sentence with his consecutive sentence of ten years.

For the reasons set forth in this opinion, we affirm in part and quash in part the judgment of the Superior Court, and we remand the case for further proceedings consistent with this opinion.

# I

## Facts and Travel

On March 3, 1995, a grand jury indicted Mr. Lambert on the charge of first-degree murder. On January 23, 1996, Mr. Lambert was convicted by a jury of second-degree murder and committing a crime of violence while armed. Later, on April 10, 1996, Mr. Lambert was sentenced to life imprisonment on the murder count, and he also received an additional ten-year sentence, to run consecutively, on the count of committing a crime of violence while armed. This Court affirmed Mr. Lambert's convictions on December 22, 1997. *State v. Lambert*, 705 A.2d 957, 965 (R.I. 1997).

After having denied Mr. Lambert parole in 2009, 2015, and 2018, the Parole Board granted Mr. Lambert parole in December of 2019. The Parole Board voted to parole him effective December of 2020, with a review date in September of 2020. In June of 2020, the Parole Board reviewed Mr. Lambert's case in order to identify special conditions for his parole and also to review his parole plan. At that

review, the Parole Board amended its prior decision and voted to change his parole date to September of 2020 "in light of the current pandemic" and "bed availability" at the Open Doors/Nine Yards Program. Subsequently, on September 1, 2020, Mr. Lambert was informed that further review of the records of the Rhode Island Department of Corrections (RIDOC) revealed that he should have been paroled to his consecutive sentence. Mr. Lambert was seen again by the Parole Board on October 14, 2020; and, at that time, the Parole Board voted unanimously to modify his parole release date so that the parole permit would correctly reflect that Mr. Lambert's life sentence had been served as of December 11, 2019, at which time he began serving his consecutive sentence. (Simply put, this meant that Mr. Lambert began serving his consecutive ten-year sentence on that date.) The Parole Board minutes from October 14, 2020 reflect that the Parole Board was unaware of Mr. Lambert's ten-year consecutive sentence at the time he was granted parole in 2019. The record also contains two parole permits introduced by Mr. Lambert. The later in time of those two permits is the operative one for the purposes of this case; it indicates that Mr. Lambert was paroled to his consecutive sentence with a retroactive date of December 11, 2019.[2]

---

[2]    Viewing the situation before us in practical terms, we are not aware of any reason why the Parole Board would have been unable to amend a previously issued parole permit and to correct an error contained therein.

On April 5, 2021, Mr. Lambert filed a *pro se* petition for a writ of habeas corpus. In his petition, Mr. Lambert contended that "RIDOC decided to alter its method of calculating parole eligibility dates for inmates serving more than one sentence, apparently to 'disaggregate' sentences * * *." Among other contentions, he claimed that, as a result of this practice, he was being unlawfully detained beyond the terms of his sentence; and he therefore requested "immediate release from custody, pursuant to the recommendation, and subject to the supervision, of the Rhode Island Parole Board."

The remaining travel of Mr. Lambert's case indicates that his habeas action was subsequently treated as an application for postconviction relief. Upon converting the case to a postconviction relief action, the Superior Court appointed counsel for Mr. Lambert. The parties acknowledge that the state and Mr. Lambert filed cross-motions for summary judgment; and, after a hearing on March 9, 2022, the hearing justice denied the state's motion for summary judgment and granted Mr. Lambert's cross-motion for summary judgment and application for postconviction relief.[3]

---

[3] A review of the record indicates that neither the state's motion for summary judgment nor Mr. Lambert's cross-motion for summary judgment appear to have been filed in the docket. However, it is undisputed that the cross-motions were heard and decided at the hearing that took place on March 9, 2022.

On March 11, 2022, an order was entered consistent with the hearing justice's decision; and on March 15, 2022, an amended order was entered. On March 9, 2022, a judgment was entered in favor of Mr. Lambert. On March 11, 2022, the state petitioned this Court for the issuance of a writ of certiorari. This Court granted the state's petition on May 11, 2023.[4]

## II

## Standard of Review

As this Court has previously noted, G.L. 1956 § 10-9.1-1 provides that "the remedy of postconviction relief is available to any person who has been convicted of a crime and who thereafter alleges either that the conviction violated the applicant's constitutional rights or that the existence of newly discovered material facts requires vacation of the conviction in the interest of justice." *Mattatall v. State*, 947 A.2d 896, 901 (R.I. 2008). When "reviewing a hearing justice's determination with respect to an application for postconviction relief, this Court will not disturb findings of the hearing justice absent clear error or a showing that the hearing justice overlooked or misconceived material evidence." *Id.* (internal quotation marks and brackets omitted). This Court has further stated that

---

[4] It has been brought to this Court's attention that Mr. Lambert is currently incarcerated at the Adult Correctional Institutions. It has also been represented that, in September of 2023, a grand jury indicted Mr. Lambert in an unrelated case on charges of murder and conspiracy to commit murder. On January 17, 2025, a jury returned a guilty verdict on both the murder and conspiracy to commit murder charges.

"questions of fact concerning whether a defendant's constitutional rights have been infringed, and mixed questions of law and fact with constitutional implications, are reviewed *de novo*." *Ouimette v. State*, 785 A.2d 1132, 1135 (R.I. 2001).

## III

## Analysis

## A

## Parole Eligibility Calculation

The state asserts that the principal issue in this case is when an individual serving a life sentence and a consecutive term of years is eligible for parole. In its brief, the state took the position that, when determining Mr. Lambert's parole eligibility date, the hearing justice erred in aggregating Mr. Lambert's sentences to serve. The state further indicates that, when it first filed its brief in this case, this was an issue of first impression.

There is no doubt that this Court's recent opinion in *Neves v. State*, 316 A.3d 1197 (R.I. 2024), is controlling and entirely resolves the aggregation issue. Although the *Neves* case primarily dealt with the interpretation of G.L. 1956 § 13-8-13(e), which is not at issue in this case, this Court in *Neves* also addressed the issue of determining parole eligibility when an individual is serving a life sentence and a consecutive sentence of a term of years. *Neves*, 316 A.3d at 1207-10. In so doing, the Court stated: "This Court has never held that a prisoner must

be granted parole on one sentence to then begin serving the next consecutive sentence." *Id.* at 1209. The Court in *Neves* concluded that "the structure and statutory framework governing parole mandates aggregating an offender's multiple definite and indeterminate sentences in order to calculate parole eligibility, including consecutive sentences * * *." *Id.* And the Court further stated:

> "Recognizing that because the statutory scheme generally requires that offenders serving multiple definite sentences or multiple indeterminate sentences must have their terms aggregated for parole eligibility purposes, it would be inconsistent with the General Assembly's overall intent and the structure of the parole statutes to conclude that chapter 8 prohibits aggregating an offender's sentences for parole eligibility purposes when those sentences contain both definite and indeterminate terms." *Id.* at 1211 (emphasis omitted).

Accordingly, the hearing justice did not err in aggregating Mr. Lambert's sentences to determine his parole eligibility date. As such, we now proceed to consider the state's second and quite separate issue.

**B**

**The Order Immediately Paroling Mr. Lambert to the Community**

In addition to its contentions regarding the issue of the calculation of parole eligibility, the state also contends that the hearing justice erred in ordering the Parole Board to immediately parole Mr. Lambert from the Adult Correctional Institutions (ACI) to the community. The state's position is that, even if it was correctly determined that Mr. Lambert was eligible for parole from the ACI, "there

- 7 -

is no authority to support the Superior Court's conclusion that * * * [Mr.] Lambert w[as] entitled to be released on parole." The state asserts that the "parole statutes instead vest the Parole Board with the discretion to issue parole permits based on its review of the criteria set forth in * * * § 13-8-14 and the Parole Board's guidelines and to identify terms and conditions of parole." In response, Mr. Lambert contends that "[t]he hearing justice correctly held that once the parole permit was issued, the law required that * * * Mr. Lambert be released to the community." To that end, Mr. Lambert contends that "Sections 13-8-9(a) and 13-8-16(a) require that once a permit is issued, a prisoner must be released to the community."

Just as was the case with respect to the issue of the calculation of parole eligibility, this Court in *Neves* sustained a virtually identical position taken by the state with respect to Superior Court orders immediately paroling the respondents in that case to the community. *Neves*, 316 A.3d at 1219. In *Neves*, this Court held that the "trial justice exceeded his authority by ordering each respondent immediately paroled to the community." *Id.* The Court reasoned that, because the respondents in that case

> "each possessed a 'signed, sealed, and issued' permit granting parole to each of their respective consecutive sentences, and not the community, the trial justice was without authority to order the parole board to order these respondents to be immediately released when the parole

board itself had not issued a permit to be at liberty on parole." *Id.* at 1220 (emphasis omitted).

As previously noted, the Parole Board minutes as well as the parole permit relating to Mr. Lambert were introduced into evidence in the Superior Court, and they reflect that the Parole Board voted to parole Mr. Lambert to his consecutive sentence, as opposed to paroling him to the community. In accordance with the holding in *Neves*, we likewise hold in the instant case that, because Mr. Lambert was paroled to a consecutive sentence and not to the community, the hearing justice lacked the authority to direct the Parole Board to order that Mr. Lambert be immediately released to the community when it had not issued a permit for him to be at liberty on parole. *See Neves*, 316 A.3d at 1220. The Parole Board's normal processes must take place before any decision to that effect (*vel non*) can be made. Accordingly, the hearing justice erred in ordering the Parole Board to immediately parole Mr. Lambert to the community.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm in part and quash in part the judgment of the Superior Court, and we remand the case to the Superior Court with our decision endorsed thereon for further proceedings consistent with this opinion. On remand, the Superior Court is directed to remand this case to the Parole Board for such actions as it deems appropriate.

**Justice Long, concurring.** I agree with the disposition of the appeal as stated in the conclusion of the majority opinion. I write separately to explain my analysis of the relevant question presented on appeal to this Court: whether the hearing justice erred in ordering the parole board to release Mr. Lambert no later than March 18, 2022.

This case began in April 2021 when Mr. Lambert filed, *pro se*, a verified petition for a writ of habeas corpus (1) seeking a finding that he had been unlawfully detained beyond the terms of his sentence and (2) requesting immediate release from confinement "pursuant to the recommendation, and subject to the supervision, of the [parole board]." The certified record on appeal reflects that the state did not file an answer to Mr. Lambert's petition. Nevertheless, on January 3, 2022, court-appointed counsel for Mr. Lambert filed a memorandum in support of an application for postconviction relief. Although the certified record on appeal does not include a written response or other pleading filed by the state, it is clear from the transcript of the proceedings that occurred on March 9, 2022, that the hearing justice, the parties, and amicus curiae treated the matter as governed by G.L. 1956 chapter 9.1 of title 10, "Post Conviction Remedy." It is thus deducible that the hearing justice proceeded to consider the petition pursuant to § 10-9.1-6(c), which provides:

> "The court may grant a motion by either party for summary disposition of the application when it appears

- 10 -

> from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."

The undisputed facts establish that when Mr. Lambert was convicted of second-degree murder and possession of a firearm during the commission of a crime of violence in 1996, he was sentenced to consecutive sentences of life imprisonment and ten years on the firearm conviction. Mr. Lambert's parole date was April 1, 2023. For reasons unknown, the Rhode Island Department of Corrections (RIDOC) did not factor Mr. Lambert's consecutive ten-year sentence into his minimum parole eligibility date and thus calculated his minimum parole eligibility date as December 1, 2009. Had RIDOC appropriately considered his consecutive sentence when determining his minimum parole eligibility date, Mr. Lambert's minimum parole eligibility date would not have been before April 2013. Mr. Lambert nevertheless appeared before the parole board in 2009. He reappeared in 2015, 2018, and 2019; on December 11, 2019, the parole board determined that he scored as low risk on the parole board's risk assessment and unanimously voted to parole Mr. Lambert with a release date set for December 2020. The parole board later accelerated the release date to September 2020.

On September 1, 2020, the day before Mr. Lambert was to be released to the community, he reviewed and signed a parole permit granting him the right to be at

- 11 -

liberty and detailing the conditions of his parole. On the morning of September 2, he was informed that he would be receiving the contents of his inmate bank account upon his release later that day. Before Mr. Lambert was released, however, the warden, deputy warden, and a captain with RIDOC at the Adult Correctional Institutions (ACI) called him to the rear of the ACI to inform him that his parole had been revoked due to an error with his department record. Specifically, the representatives of RIDOC informed him that "he has a ten[-]year consecutive sentence that was found during the process of getting his discharge papers together." There is no record of any emergency meeting of the parole board prior to the events of September 2, 2020.

The parole board scheduled a new hearing date of October 1, 2020; Mr. Lambert appeared before the parole board on October 14, 2020, at which time the Board "vote[d] unanimously to modify his parole release date on the LIFE sentence to December 11, 2019." The parole board issued a new parole permit on October 20, 2020 (second parole permit), with the following special conditions: "Parole to consecutive sentence with a retroactive date of December 11, 2019." It is undisputed that RIDOC's method of disaggregating the life sentence and the consecutive ten-year sentence lengthened Mr. Lambert's date of parole eligibility for release by an additional three years and four months.

The hearing justice held a hearing on cross-motions for summary judgment on March 9, 2022, approximately one year and four months after the parole board issued the second parole permit. The state did not dispute the facts as alleged in the verified petition but argued that the primary issue was one of statutory interpretation and further that RIDOC's method of disaggregating the life sentence and the consecutive ten-year sentence was correct as a matter of law. Counsel for Mr. Lambert argued that G.L. 1956 §§ 13-8-10 and 13-8-13 clearly required aggregation of the sentences. He also emphasized that the parole board had already unanimously awarded parole to Mr. Lambert.

The hearing justice concluded that Mr. Lambert was entitled to summary judgment, including with respect to his request for immediate release from confinement pursuant to the recommendation of the parole board, reasoning:

> "[W]hen he was granted the parole permit to be at liberty on September 1, 2020, to be released physically on the following day, September 2, that he was entitled to be paroled on both sentences to the community, to be at liberty in the community where he would reside."

Upon the state's objection to Mr. Lambert's immediate release from confinement, the hearing justice ordered that Mr. Lambert was to be presented to the parole board at the hearing scheduled for March 14, 2022. On March 15, 2022, a written order entered providing that Mr. Lambert "is to be issued a parole permit with a release date no later than March 18, 2022."

- 13 -

This Court reviews *de novo* an order granting summary judgment. *Reyes v. State*, 141 A.3d 644, 652 (R.I. 2016).

I concur with my colleagues in the majority that the hearing justice exceeded his authority by ordering that Mr. Lambert be immediately paroled to the community. *Neves v. State*, 316 A.3d 1197, 1219-20 (R.I. 2024). This Court recognized in *Neves* the weight that a signed, sealed, and issued parole permit carries with it:

> "Pursuant to G.L. 1956 § 13-8-21, all permits and orders of the parole board issued under chapter 8 of title 13 must be signed by the chairperson and one other member of the parole board and must be affixed with the seal of the board. *Only at the point when the permit has been signed, sealed, and issued is the permit for parole given full recognition.*" *Neves*, 316 A.3d at 1220 (quoting *Yang v. State*, 703 A.2d 754, 756 (R.I. 1997)).

A decision granting parole authorizes an individual to be at liberty in the community subject to the conditions of their parole permit, and there are minimum procedural safeguards that a parole board must meet before revoking parole. *See Morrissey v. Brewer*, 408 U.S. 471, 482-89 (1972).

The facts of this case establish an *undisputed* and startling revocation of Mr. Lambert's parole in the moments before he was scheduled to leave the ACI on September 2, 2020, with a unanimously granted parole permit in hand. On these facts, and in light of the lack of briefing on the issue or the appearance of either RIDOC or the parole board as parties to the proceedings, I cannot agree with my

- 14 -

colleagues' statement that they are not "aware of any reason why the [p]arole [b]oard would have been unable to amend a previously issued parole permit and to correct an error contained therein."

What troubles me—and what clearly troubled the hearing justice—is the swift and arbitrary way in which RIDOC and the parole board elected to reverse course with respect to Mr. Lambert. In my view, the decision to revoke Mr. Lambert's parole when he was on the way out the door raises more than merely a question of administrative error. A signed, sealed, and issued parole permit to be at liberty in the community carries with it more than bureaucratic formality; it embodies the parole board's considered determination that a person may reenter society. *See Yang*, 703 A.2d at 756. To rescind that permit requires some level of process.[1] *See* § 13-8-18.1. That process is an acknowledgment of the human cost of depriving someone of their freedom. *See Morrissey*, 408 U.S. at 482 ("We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss'

---

[1] General Laws 1956 § 13-8-18.1 provides, in pertinent part, that a parolee is entitled to written notice within five days of his detention as an alleged violator of the time, place, and purpose of the preliminary revocation hearing, and a preliminary revocation hearing "[a]s soon as is practicable" but no longer than ten days following the service of notice.

Here, it is undisputed that Mr. Lambert did not receive notice before his parole was unilaterally revoked, and then waited six weeks to appear before the parole board for a hearing. At that hearing, the parole board decided to issue a new parole permit that accounted for his consecutive sentence.

on the parolee and often on others."). Revocation absent that process flies in the face of fundamental fairness. *See id.* at 484 ("Society thus has an interest in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of parole conditions. * * * And society has a further interest in treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness."); *see also* § 13-8-18.1. Even though no constitutional due-process claim has been raised for our review, I cannot ignore the troublesome implications of the tacit endorsement of RIDOC's actions and the parole board's revocation under these circumstances.

Notwithstanding my own reservations, no party has appealed or briefed any issue related to the revocation of Mr. Lambert's parole. As a result, I would decide this case, as the majority does, solely on the grounds of the hearing justice's error in ordering the parole board to issue a parole permit with a release date no later than March 18, 2022. Because it is undisputed that Mr. Lambert possessed the "signed, sealed, and issued" second parole permit granting parole to his consecutive sentence, the hearing justice was without authority to order the parole board to issue a parole permit with a release date no later than March 18, 2022. *Neves*, 316 A.3d at 1220.